## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA BERMUDEZ, | : | |
| Plaintiff, | : | 19-cv-4085-JMY |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE INSURANCE CO., | : | |
| Defendant. | : | |

## MEMORANDUM

**YOUNGE, J.**                                                              July 19, 2021

Plaintiff asserts claims against Defendant for breach of contract (Complaint, Notice of Removal, Ex. A, ECF No. 1. (Count I)); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1. *et seq*., (*Id.* (Count II); and statutory and common law bad faith. (*Id.* (Count III). Following a motion to dismiss filed by Defendant, the Court entered an Order that dismissed Plaintiff's claim for violation of the UTPCPL, but permitted Plaintiff to proceed with her claims brought for breach of contract and insurance bad faith. (Order, ECF No. 17.)

Currently before the Court is a motion for partial summary judgment on the bad faith claims (Motion for Summary Judgment, "SJM", ECF No. 29) and a motion to bifurcate trial. (Motion to Bifurcate Trial, "MBT", ECF No. 38.) Defendant's motion for summary judgment and motion to bifurcate trial will be denied based on the parties' written submissions and without oral argument pursuant to Fed. R. Civ. P. 78; L.R. 7.1(f).

## I.      BACKGROUND:

In this insurance dispute, Plaintiff alleges that Defendant has wrongfully failed to make any timely payment for the theft of, and damage to, one of Plaintiff's vehicles that was insured by Defendant. (See generally, Complaint, Notice of Removal, Ex. A, ECF No. 1.) Specifically,

Plaintiff alleges that on or about March 22, 2019, she purchased a 2013 Jaguar XJL (the "Vehicle"), which she insured under her Progressive policy number 927710925. (*Id.* ¶¶ 4-5; Response to Statement of Undisputed Material Facts ¶ 13, "Resp UMF", ECF No. 32-1.) Plaintiff alleges that at some time between 10:00 p.m. on April 27 and 12:00 a.m. on April 28, 2019, her Vehicle was stolen from outside Plaintiff's mother's house in Philadelphia, while Plaintiff was working as a Lyft ride-share operator in her other car.  (Resp UMF ¶¶ 17-18.) Plaintiff alleges that while driving in her other car toward the Northern Liberties section of Philadelphia, she saw the Vehicle, which had been involved in an accident. (Resp UMF ¶¶ 19-20.)  Plaintiff avers that she did not give anyone else permission to use the Vehicle, nor did she have any knowledge that another person was operating the Vehicle.  (Complaint ¶¶ 11-12.) Plaintiff reported the Vehicle theft to the police and reported the theft and damage to Defendant. (Resp UMF ¶¶ 8-9.)  Defendant investigated Plaintiff's claim, which was placed with its Special Investigations Unit.  (Resp UMF ¶¶ 28-30.)  Plaintiff alleges that Defendant has possession of the Vehicle, yet has failed to make any payment for the loss or to inform Plaintiff's lender of its intent to pay for the Vehicle.  (Complaint ¶¶ 16-17, 19.)

In its motion for summary judgment, Defendant highlights several red flags that it purports to have uncovered which support its decision to further investigate and deny coverage for Plaintiff's stolen and damaged Vehicle.  (SJM page 102.)  For example, it highlights the fact Plaintiff's insurance application and policy of coverage identified her as being married to a man named John Bermudez who was listed as a permissive driver of her Vehicle.[1]  (*Id.*)  The Vehicle was involved in an accident with the driver fleeing the scene.  Defendant raises questions about the likelihood of Plaintiff finding her Vehicle after it was purportedly stolen and crashed while she was working as a Lyft driver.  (*Id.*)

Defendant also highlights the fact that the Vehicle was equipped with a transponder which made it very hard to operate without a key, and the fact that Plaintiff provided inconsistent statements about the whereabouts of her car keys on the night in question.  (*Id.*)  For example, during her initial recorded statement with Timothy Klutchka, she stated that she left one of the keys inside the console of the Vehicle.  (Recorded Interview Bermudez page 11-12, Opposition, Ex. D., ECF No. 32-2.)  Later at deposition, she testified that it was not her usual practice to leave her keys in her car, but that it was possible that she left a key in her Vehicle on the night it was stolen.  (Jessica Bermudez Deposition page 50-51, *Id.* Ex. A.)  Plaintiff also provided inconsistent statements as to whether she called Tavine Hill after she arrived at the accident scene and as to how Mr. Hill arrived on the scene of the accident on the night in question.  (MSJ page 2.)

## II.    LEGAL STANDARD:

### A.    Legal Standard for Summary Judgment:

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In examining Defendant's motion, we must view the facts in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).  Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

**B.      Legal Standard for Bifurcation of Trial:**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  Under this rule, the district court has broad discretion to grant or deny a motion to bifurcate claims.  While bifurcation is "encouraged where experience has demonstrated its worth," doing so is not routine and should be done on a case-by-case basis.  *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) (citing *Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1971) (concluding that a routine order of bifurcation in certain classes of cases would be "at odds with [the court's] requirement that discretion be exercised and seems to run counter to the intention of the rule drafters").

The moving party has the burden to show that bifurcation is proper under Rule 42(b).  *Innovative Office Prods., Inc. v. SpaceCo, Inc.*, No. 05-4037, 2006 U.S. Dist. LEXIS 29439, *4 (E.D. Pa. May 15, 2006).  In determining whether to bifurcate claims, a district court should consider "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation."  *Official Comm. of Unsecured Creditors v. Shapiro*, No. 99-0526, 190 F.R.D. 352, 355 (E.D. Pa. Jan. 11, 2000).  The Court must make an independent determination that separate trials are appropriate for the case at hand, *Franklin Music Co. v. Am Broad Cos.*, 616 F.2d 528, 538 (3d Cir. 1979), because the decision to bifurcate is a matter to be determined on a case-by-case basis and must be subject to the discretion of the trial judge in each instance.  *Robert Packer*, 579 F.2d at 824.  "The court is specifically to consider: (1) whether the claims sought to be tried separately are significantly different from one another, (2) whether the claims require different evidentiary proof, (3) whether the non-moving party will be prejudiced by severance, and (4) whether the moving party will be prejudiced by

proceeding to one trial." *Zinno v. Geico Gen. Ins. Co.*, 2016 U.S. Dist. LEXIS 161250, *3 (E.D. Pa. Nov. 21, 2016).

## III.   DISCUSSION:

### A.   The Motion for Partial Summary Judgment filed by Progressive Fails:

Defendant argues that summary judgment should be entered on the Plaintiff's bad faith claims because she cannot prove the first element of the test necessary to prove common law or statutory insurance bad faith under 42 Pa. C.S. § 8371.[2]  (SJM page 3.)  Defendant argues that it conducted a sufficiently thorough investigation of Plaintiff's theft claim which provided a reasonable basis for its refusal to provide coverage for her loss.  (*Id.*)  Specifically, it points to what it characterizes as numerous red flags primarily in the nature of inconsistencies in Plaintiff's narrative of the events as a reasonable basis to refuse coverage for the theft and resulting damage to the Vehicle.  (*Id.*)

To prevail in a bad faith claim brought under 42 Pa. C.S. § 8371, "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (adopting the two-prong test from *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994).  This "heightened standard" requires an insured to adduce evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. Nov. 30, 2005).  The insured's burden at summary judgment is "commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Id.*

The first element necessary to prevail on a bad faith claim is objective, "so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot as a matter of law be bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. Nov. 7, 2012) (quoting *Wedemeyer v. United States Life Ins. Co.,* No. 05-6263, 2007 U.S. Dist. LEXIS 15742, *28 (E.D. Pa. Mar. 6, 2007)). While an insurer has a duty to investigate claims fairly and objectively, *Diamon v. Penn Mut. Fire Ins. Co.*, 372 A.2d 1218, 1226 (Pa. Super. 1977), an insurer may defeat a bad faith claim "by showing that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Luse v. Liberty Mut. Fire Ins. Co.*, 411 Fed. App'x 462, 465 (3d Cir. 2011) (citing *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)).

There is "[n]o doubt that [u]nder Pennsylvania law, insurers are permitted to conduct a thorough investigation of a questionable claim without acting in bad faith, and [w]here an insurer sees red flags that cause concern of insurance fraud and prompt an investigation, the insurer has a reasonable basis for investigation, and is therefore not liable for claims of bad faith." *Fuentes v. USAA Gen. Indemnity Co.*, No. 19-1111, 2021 U.S. Dist. LEXIS 63837, *32 (M.D. Pa. April 1, 2021) (quoting *Merrone v. Allstate Ins. Co.*, No. 18-0193, 2019 U.S. Dist. Lexis 181450 *14 (W.D. Pa. Oct. 21, 2019)); *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999) (affirming judgment in favor of insurer where the insurer's investigation revealed "red flags" which prompted further investigation). Defendant "need not show that the process used to reach its conclusions was flawless or that its investigatory methods eliminated possibilities at odds with its conclusions. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp.2d 656, 670 (W.D. Pa. Nov. 7, 2012) (quoting *Mann*

*v. UNUM Life Ins. Co. of Am.*, No. 02-1346, 2003 U.S. Dist. Lexis 23993, *18 (E.D. Pa. Nov. 25, 2003)); *Cantor v. Equitable Life Assur. Soc'y of the United States*, No. 97-571, 1999 U.S. Dist. LEXIS 4805, *9 (E.D. Pa. April 13, 1999).

The second element in the test for establishing bad faith has not been directly placed at issue in Defendant's Motion for Summary Judgment.  However, the second element of a bad faith claim requires the insured to demonstrate that the "insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 369 (Pa. Super. 2017) (citing *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1191 (Pa. Super. 2007)).  "The essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004).  "[P]roof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371." *Rancosky*, 170 A.3d at 377.

The investigation and red flags described by Defendant do not establish that it is entitled to entry of summary judgment in its favor.  In response to Defendant motion for partial summary judgment, Plaintiff points to several holes in Defendant's investigation of her claim.  (Opposition to SJM page 10, ECF No. 32.)  For example, Defendant's claim investigator, Phillip Delong, testified that he did not speak with the police officer or officers who responded to the accident scene, filled out the accident report, and/or took the stolen Vehicle report.  (Phillip Delong Deposition page 42, Opposition to SJM, Ex. F., ECF No. 32-2.)  Phillip Delong also testified that he failed to speak in any substantive fashion with the eye-witness who saw the accident and witnessed someone fleeing the accident scene.  (*Id*. page 43.)  Equally, there was no evidence to establish that Plaintiff was the target of any official criminal investigation in connection with the

accident or the reported stolen Vehicle.  In fact, Defendant's claims representative, Timothy Klutchka, testified that there was no direct evidence to suggest that Plaintiff perpetrated a fraud against Progressive or that she was involved in the theft of her Vehicle.  (Timothy Klutchka Deposition page 72, Opposition to SJM, Ex. B, ECF No. 32-2.)  He also testified that it was not uncommon for people to leave car keys inside of cars that were later reported stolen.  (*Id.* page 72.)

Nothing in the record as it stands suggests that the Plaintiff had any motive to damage, destroy or fake the theft of her Vehicle.  There is no evidence that Plaintiff was in financial destress or in arrears on payments, that the Vehicle was having mechanical problems, or that she was otherwise unhappy with her purchase.  There is no dispute that the Vehicle was damaged in an accident, and it would appear that the policy in effect offered comprehensive collision coverage.

Therefore, the Court is not prepared to enter summary judgment on the bad faith claims.

### B.      Motion to Bifurcate filed by Progressive:

Defendant argues that theories of insurance bad faith should be bifurcated from Plaintiff's claim for breach of contract and that theories for insurance bad faith should receive a separate trial after the resolution of Plaintiff's breach of contract claim.  (MBT page 7-8.)  Defendant argues that each claim will require separate evidence on distinct legal issues; therefore, bifurcation of trial is necessary to prevent unfair prejudice.  (*Id.* page 4.)  It also argues that bifurcation would serve the interests of judicial economy because a trial on insurance bad faith would be unnecessary if Plaintiff's breach of contract claim is resolved in its favor.  (*Id.* page 7.)

In its Motion to Bifurcate trial, Defendant failed to establish the level of prejudice necessary to warrant bifurcation.  *Reeves v. Travelers Co.*, 2017 U.S. Dist. LEXIS 54932, *7

(E.D. Pa. Apr. 11, 2017).  After a review of Defendant's motion for partial summary judgment, it would appear that the evidence related to Plaintiff's breach of contract claim will overlap evidence presented in relationship to Plaintiff's insurance bad faith claim.  For example, both claims will focus on whether Plaintiff was involved in the theft of her own Vehicle and/or whether Plaintiff made a material misrepresentation to her insurance company in connection with her claim.  Defendant's investigatory process, its interpretation of the evidence and impression of witnesses which would ordinarily be relevant to an insurance bad faith claim will be equally relevant to the breach of contract claim under the facts of this case.  Defendant's reason for refusing to provide coverage for the Vehicle will be at issue in the breach of contract claim.  *See generally Zinno v. GEICO Ins. Co.*, 2016 U.S. Dist. LEXIS 161250, *5 (Pa. E.D. Nov. 21. 2016) (denying a motion to bifurcate where evidence was overlapping and claims were similarly intertwined).

From the perspective of judicial economy, bifurcation of trial on separate claims could prove inefficient and inconvenient.  *See generally Reeves*, 2017 U.S. Dist. LEXIS 54932, *8. Bifurcation could result in the unnecessary need to call the same witnesses twice to testify before the same jury on two separate occasions which would extend the amount of time necessary for the jury to resolve this litigation.

Based on overlapping evidence and the intertwined nature of the two claims, the prejudice that Defendant will suffer from trying these two claims together remains to be seen. However, to mitigate any potential concerns, the Court could provide curative instructions and/or implement a staged verdict sheet that would ask the jury to resolve the breach of contract claim prior to reaching the insurance bad faith claim.  The varying burdens of proof for breach of contract and insurance bad faith could be explained to the jury and described on the verdict

sheet.  Potentially, evidence related to damages under insurance bad faith, and specifically

punitive damages, could be presented to the jury after it resolves issues related to liability.  These

issues can be fairly addressed at a pretrial conference prior to jury selection.

**IV.     CONCLUSION:**

      For these reasons, Defendant's motion for summary judgment and motion to bifurcate

trial will be denied.  An appropriate order will be entered.


                BY THE COURT:

                 /s/ John Milton Younge
                Judge John M. Younge

---

[1]  Plaintiff is not married, and she avers that she has never met and does not know John Bermudez.  Plaintiff avers that his name was erroneously listed on her insurance policy by some mistake on the part of Defendant.

[2]  Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371, states:
    In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.  (2) Award punitive damages against the insurer.  (3) Assess court costs and attorney fees against the insurer.